UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

OTIS ELEVATOR COMPANY,              )
                                    )   05  11213 NMG
    Plaintiff,                      )
                                    )   Docket No.
v.                                  )   MAGISTRATE JUDGE
                                    )
LOCAL 4, INTERNATIONAL UNION        )
OF ELEVATOR CONSTRUCTORS;           )
MICHAEL LANGER, INDIVIDUALLY, and as )   RECEIPT #  64843
BUSINESS MANAGER; KEVIN McGETTIGAN, )    AMOUNT $ 250
INDIVIDUALLY, and as BUSINESS       )    SUMMONS ISSUED  yes
REPRESENTATIVE; STEVE MORSE,        )    LOCAL RULE 4.1
INDIVIDUALLY, and as BUSINESS       )    WAIVER FORM
REPRESENTATIVE, and all others      )    MCF ISSUED
conspiring, acting in concert or otherwise ) BY DPTY. CLK.  TOM
participating with them or acting in their aid ) DATE 6/9/05
or behalf.                          )
                                    )
    Defendants.                     )

**VERIFIED COMPLAINT**
**INJUNCTIVE RELIEF SOUGHT**

**THE PARTIES**

1.  Plaintiff, Otis Elevator Company ("Otis"), a New Jersey corporation, is engaged in the business of constructing, modernizing, repairing and servicing of elevators and escalators throughout the United States, including Massachusetts.

2.  Otis employs elevator constructor Mechanics, Helpers, and Apprentices represented by the International Union of Elevator Constructors (the "IUEC") for and on behalf of its locals including Defendant IUEC Local 4 ("Local 4").

3.  This is an action to enjoin a work stoppage and other interferences with the Plaintiff's operations in violation of contract between an employer and a labor organization

DOWNS
RACHLIN
MARTIN PLLC

representing employees in an industry affecting commerce, as defined in the Labor Management Relations Act, 29 U.S.C. § 141 et seq. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 185(a).

4. Venue is proper in this District pursuant to 28 U.S.C. §1391 (b).

5. Otis is an employer within the meaning of Section 2(2) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(2).

6. IUEC, which has a principal place of business at 7154 Columbia Gateway Drive, Columbia, MD 21044, is the exclusive collective-bargaining representative of elevator constructor Mechanics, Helpers, and Apprentices, for and on behalf of its locals, including Defendant IUEC Local 4, which has a principal place of business at 645R Morrissey Blvd., Dorchester, Massachusetts 02122. Local 4 represents Mechanics, Helpers, and Apprentices employed by Otis in a region that includes Eastern Massachusetts, New Hampshire, and Maine regions.

7. Defendant Michael Langer is Business Manager for Local 4.

8. Defendants Kevin McGettigan and Steve Morse are Business Representatives of Local 4.

9. Local 4 is a labor organization within the meaning of Section 2(5) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(5).

10. This action is related to a previous action filed in this Court, involving the same parties, to enjoin another recent illegal work stoppage by Local 4 over another arbitrable dispute under Article IV of the contract. That action is Civil Action No. 04-10966-NMG and resulted in a recent decision by the United States Court of Appeals for the First Circuit (Case Nos. 04-1933, 04-2047). That case has been remanded to this Court and is currently pending before Judge

Gorton.

## THE COLLECTIVE-BARGAINING AGREEMENT

11. Otis and the IUEC, for and on behalf of its locals including Local 4, have entered into a collective-bargaining agreement, which became effective July 9, 2002 and remains in full force and effect until July 8, 2007 (the "Otis Agreement"). A true and accurate copy of the Otis Agreement is attached as Exhibit A.

12. Since 1987, Otis has entered into a series of five-year collective-bargaining agreements with the IUEC, "for and on behalf of its affiliated local unions . . . ." Prior to 1987, Otis was a member of the National Elevator Industry, Inc. ("NEII") a multi-employer association that negotiated a series of collective-bargaining agreements with the IUEC (the "Standard Agreements").

13. The Otis Agreement has language substantially the same as the Standard Agreements in many articles.

14. Article XIV of the Otis Agreement expressly prohibits strikes during the term of the Agreement. It provides in pertinent part:

### ARTICLE XIV
### STRIKES AND LOCKOUTS

**Par. 1.** It is agreed by both parties to this Agreement that so long as the provisions herein contained are conformed to, no strikes or lockouts shall be ordered against either party. It is understood that this Paragraph shall be applied and construed consistent with the provisions of Article IV, Par. 11 concerning Grievance and Arbitration procedure.

**Par. 2.** No strike will be called against the Company by the Union unless the strike is approved by the International Office of the International Union of Elevator constructors. Sufficient notice shall be given to the Company before a strike shall become effective. Except in the case of Contract Service Work as specified in Article IX of this Agreement, work stoppages brought about by

DOWNS
RACHLIN
MARTIN PLLC

3

lawful picketing or strikes by building trades local unions affiliated with Building Trades Councils shall not constitute a strike within the meaning of this Article.

**Par. 3.** In the event of a strike, work stoppage or lockout affecting Mechanics, Helpers and Apprentices on New Construction or Repair Work, men working on Contract Service shall not be affected by such strike, work stoppage or lockout, and the Union will supply competent men to the Company to do all work covered under Contract service whether such men are continuously employed in this work or not prior to the strike, work stoppage or lockout.

15. Article XV of the Otis Agreement requires that "[a]ny difference or dispute regarding the application and construction of this Agreement" shall be resolved under the grievance/arbitration procedure set forth in the Otis Agreement, which provides for final and binding arbitration by an impartial arbitrator.

16. The Otis Agreement covers the terms and conditions of employment of elevator constructor Mechanics, Helpers, and Apprentices employed by Otis in Massachusetts, New Hampshire, and Maine. The Otis Agreement provides that all elevator and escalator construction, service, repair, and modernization must be performed exclusively by elevator constructor Mechanics, Helpers, and Apprentices represented by the IUEC.

### THE UNDERLYING DISPUTE AND THE UNLAWFUL WORK STOPPAGE

17. A dispute has recently arisen between Otis and Local 4 involving the discipline of two Otis Mechanics – one for harassing another employee who had resigned his membership from the IUEC and Local 4, and one for refusing a work assignment. This dispute has resulted in an illegal work stoppage by all Otis' employees throughout the state of Maine who are members of Local 4.

18. On or about April 5, 2005, one of Otis' Mechanics working in Maine, John

Gorecki, resigned his union membership in the IUEC and Local 4. (Attached to the Declaration of Doug Christensen as Exhibit A are copies of the April 5, 2005 resignation letters Mechanic Gorecki sent to the IUEC and Local 4; attached as Exhibit B to the Christensen Declaration are the IUEC's April 25, 2005 letter acknowledging Mechanic Gorecki's resignation and stating that the IUEC will not charge Mechanic Gorecki a representation fee). After resigning his union membership, Mechanic Gorecki continued to be employed as a Mechanic by Otis.

19. On or about April 29, 2005, Local 4 officials held a meeting in Maine. During or shortly after that meeting, Mechanic Gorecki began to receive harassing messages on his home voice mail and on his cell phone voice mail. For example, on April 29, 2005, at about 9:08 pm, Mechanic Gorecki received the following message:

> (Laughing)
>
> If this is John Gorecki's house
>
> (pause)
>
> ("you're an asshole" said in the background)
>
> you're a scab and a loser far as the Union is concerned.
>
> (pause)
>
> (Talking in background)
>
> All Union members uh are pretty upset with uh John Gorecki if
> this is John Gorecki's number
>
> (laughing)

(Attached as Exhibit C to the Christensen Declaration is a transcript of this message).

20. Otis determined that another employee, Mechanic Mike Chapman, had participated in at least one of the harassing phone calls. Mechanic Chapman also threatened that if he were assigned to work with Mechanic Gorecki he would make Mechanic Gorecki's life

"miserable" and he would make his supervisor, Otis Territory Manager Scott Fraser's life "miserable." Based on Mechanic Chapman's unprofessional and inappropriate conduct and harassment, Otis issued Mechanic Chapman a written warning dated May 5, 2005 (A copy of this warning letter is attached as Exhibit A to the Declaration of Scott Fraser).

21. Thereafter, other Mechanics stated that they did not want to work with Mechanic Gorecki.

22. On or about Friday May 27, 2005, Otis Construction Superintendent Dick Hogue informed Otis Apprentice Eric Smith that he would be assigned to work on a job with Mechanic Gorecki starting the following Monday, May 30, 2005. Apprentice Smith responded that he would be taking a vacation that week and that he would not return until Monday, June 6.

23. During the time of Apprentice Smith's absence, Otis tried to hire an available Apprentice from the Local 4 list of unemployed workers, or "open employment list". One Apprentice, Rob Burpee, initially indicated that he would accept the assignment. Shortly thereafter, however, Apprentice Burpee called to say "I've got personal issues, I can't show up." Apprentice Burpee later spoke with an Otis Supervisor, Todd Pettersen, and reported that he had spoken with Local 4 after receiving the assignment to work with Otis. Apprentice Burpee stated that Local 4 told him that if the assignment is to work with John Gorecki, they hoped he would think about it. Apprentice Burpee stated that he "felt conflicted", and he therefore had to decline the assignment.

24. On Monday, June 6, 2005, Apprentice Smith returned from his vacation and reported to the Portland office. Upon being informed by Otis Construction Superintendent Dick Hogue that he was being assigned to work with Mechanic Gorecki, Apprentice Smith refused. Apprentice Smith based his refusal on a "promise" he had made to his union borthers and sisters

that he would not work with Mechanic Gorecki. Due to this refusal to perform assigned work, Otis issued Apprentice Smith a written warning.

25. The next day, June 7, 2005, at or about 7:30 a.m., nearly all of the 16 Otis Mechanics and Apprentices who work out of the Portland office arrived at the office (instead of reporting to job sites) and waited in the parking lot. Superintendent Hogue and Regional Field Operations Manager ("RFOM") Christensen spoke with them. The employees stated that they were unhappy with Mechanic Gorecki because he had left the union. The employees asked whether Mechanic Gorecki could be assigned to work on a maintenance route where he could work alone. RFOM Christensen emphasized that Otis could not discriminate against Mechanic Gorecki and could not make assignments based on union status; he also emphasized that Otis had the right to make job assignments.

26. At the Bangor Maine office, Mechanics arrived for work late and informed Otis Territory Manager Scott Fraser that they were upset because an Apprentice had been disciplined for refusing to work with Mechanic Gorecki. Although the mechanics eventually reported to work they reported that they had been prepared not to work that day. One Mechanic, John Dondero, stated that "if Eric isn't hired back, word is we're going on strike tomorrow."

27. The next day, Wednesday June 8, 2005, at or about 8:00 a.m., Otis' Portland Mechanics and Apprentices again arrived at the Portland office instead of their regular work sites. The employees stated that they were standing behind Apprentice Smith. The employees then left, presumably to begin work. Shortly thereafter, however, the employees began to call their supervisors to say that they were not reporting to work. Most employees said they were sick; a few stated that they would not return until "this is resolved."

28. At the Bangor office, when Territory Manager Fraser asked about the employees'

indicated that they were sick and would be unable to work.

33. The employees did not report to the office to speak with RFOM Christensen, as Business Manager Langer had represented.

34. Currently, Otis' construction work in Maine has come to a halt, and Otis' service and maintenance Mechanics are refusing to work.

35. At or about 10:00 a.m. on Thursday June 9, 2005, Otis Labor Relations Manager David Powilatis spoke in person with Local 4 Business Manager Michael Langer at 133 Federal Street in Boston. He asked Business Manager Langer to direct Local 4 members in Maine to return to work. Business Manager Langer replied, "If Gorecki is required to work alone for 1 month, I think that will get some guys to return to work."

36. This dispute is subject to arbitration pursuant to Article XV, Par. 1 of the Otis Agreement.

37. The work stoppage is in violation of Article XIV of the Otis Agreement and is illegal.

### THE IRREPARABLE HARM RESULTING FROM THE UNLAWFUL WORK STOPPAGE

38. Otis has service and maintenance contracts with numerous customers throughout Maine and New Hampshire, including hospitals, assisted living facilities, nursing homes, power plants, apartments, condominiums and hotels. Otis' service contracts provide for the service of elevators and escalators, including emergency service, 24 hours per day, seven days per week.

39. Every one of the Local 4 members employed by Otis in Maine to service elevators and escalators in Maine failed to report to work as scheduled on June 8, 2005.

40. If Local 4 continues to interfere with Otis' operations, Otis will be unable to fulfill its

contractual obligations in a timely manner.

41. The unlawful acts specified herein were committed by Local 4 acting through its agents and members.

42. Otis has demanded that Local 4 cease its illegal work stoppage and comply with the Otis Agreement, but the Union has refused.

43. The Defendants' coercive actions are in deliberate willful and calculated violation of the Otis Agreement in disregard of the arbitration process.

44. Unless restrained by order of this Court, the concerted refusal to work by the employees represented by Defendants in violation of the Otis Agreement will continue.

45. Defendants have previously engaged in a pattern of unlawful work stoppage including in or about August 2002, November 2003, April 2004, May 2004, and November 2004.

46. There is no method for calculating the damage cased by Local 4's work stoppage.

47. Otis has valuable construction contracts in Maine, including one at Bowdoin College to install two seven-stop elevators; at University of New England Residential Center to install one five-stop hydraulic elevator; and at University of Maine at Presque Isle Health and Research Building to install a two-stop elevator.

48. As a result of Local 4's directive, elevator construction work at the three projects has come to a complete standstill. Otis has been unable to proceed with construction at the projects in a timely manner.

49. Local 4's refusal to work is preventing Otis from fulfilling its contractual obligations and jeopardizing Otis' relationship with the construction contractors on the four projects. Otis vies with several other elevator and escalator manufacturers in an extremely competitive market

for construction contracts. Timely completion of construction contracts is often one of the most important factors in determining whether Otis is awarded subsequent contracts. The potential irreparable harm is particularly acute at the Western New England Residential Center, where Otis' construction contract is with Oulett Construction, a valued Otis customer. The work stoppage also threatens Otis' relationship with the University of New England, the property owner, from whom Otis has obtained contracts for elevator service. Otis is currently in negotiations with the owner for new service contracts to replace contracts scheduled to expire in October 2005. The work stoppage at the construction job at the University of New England threatens Otis' prospects of obtaining the service contracts there.

50. Otis has contractual obligations to customers to service their elevators including responding promptly to emergency situations where public safety, health and welfare are at risk. The need for an immediate response to elevator problems is especially important at hospitals where elevators are used to transport patients in need of critical care.

51. The prompt servicing of elevators and escalators in emergency situations, particularly after normal working hours, is important to public safety, health and welfare. Such situations have occurred, for example, when smoke or fire threatens buildings, when people become trapped in elevators, and when patient care or surgery is interrupted by an elevator failure. The presence of non-operational elevators and escalators at hospitals, nursing homes or other locations where the elderly or disabled live or work can exacerbate the conditions created by emergencies. It is for this reason that Otis provides its customers with 24-hour service, every day of the year. Otis' customers expect that service and depend on the Company's reliability at all times. A collective work stoppage or strike by employees refusing to handle service calls would seriously disrupt and interfere with Otis' service operations in Maine. In addition, it

would pose a serious threat to customer relations and would put the Company at risk of potential liability for its inability to promptly respond to callbacks.

52. Unless the relief sought herein is granted, substantial and irreparable injury to Otis and its customers will follow. The unlawful work stoppages will prevent Otis from fulfilling its contractual obligations and threaten Otis' reputation and good will with customers.

53. Unless the relief sought herein is granted, substantial and irreparable injury to Otis and its customers will follow. The unlawful work stoppage is preventing Otis from fulfilling its contractual obligations and threatening Otis's reputation and good will with customers.

54. Otis has no adequate remedy at law for the injuries caused and threatened by Defendants' illegal conduct.

55. Unless Defendants are enjoined from their illegal and unlawful acts, and are ordered to resume performance of work, such actions will continue to cause immediate, substantial, and irreparable harm to Otis, the amount of which cannot be definitely ascertained, in that:

    a. Otis has been and will be unable to render adequate performance of its contractual obligations to construct elevators;

    b. Otis will suffer temporary and permanent loss of business as a result of damage to its good will and reputation in the industry and its commercial relationships as a result of which its ability to bid on future jobs will be impaired;

    c. Otis will be caused to breach its agreements to provide elevator maintenance service to its customers; and

    d. Members of the public will be subject to threat of irreparable harm.

56. The effect on the Defendants, if injunctive relief is granted, is less onerous than the harm that will be suffered by Otis and its customers if the injunction is not granted.

57. Otis has complied with all obligations imposed by law that are involved in this labor dispute.

58. Otis has made every reasonable effort to settle this labor dispute.

59. No prior application for the specific relief herein sought by Otis or for similar relief has been made to any court or judge of the United States or of any state.

WHEREFORE, Plaintiff, Otis Elevator Company demands judgment:

I.     Granting Plaintiff a temporary restraining order, and a preliminary and permanent injunction, restraining and enjoining Defendants, their officers, agents, representatives, members, employees and attorneys and all persons acting in concert or participation with them, including but not limited to the individuals named as Defendants in this Complaint, from in any manner or by any means:

    A)    calling, causing, inducing, encouraging, authorizing, conducting, continuing in or engaging in any strike, work stoppage, work slowdown, sit-down, or any other refusal to work or act of coercion or interference with Plaintiff's normal operations;

    B)    by Union discipline, penalty or otherwise, interfering with, or inducing or attempting to induce any person to interfere with any employee or agent of Plaintiff in the course of any such employee's or agent's work for Plaintiff;

    C)    by threats or otherwise, interfering with or attempting to induce any person to interfere with or otherwise affect the ordinary continuation of Plaintiff's operation, and from taking any action which would interfere with this Court's jurisdiction in the premises;

    D)    causing, inducing, conducting or carrying out any concerted activity of any kind having the effect of interfering with the Plaintiff's normal operations prior to the hearing on Plaintiff's application for a preliminary injunction;

II.    Directing Defendants to take all reasonable means to communicate and effectuate the provisions of the orders issued by the Court, including but not limited to the holding of meetings with employees represented by Defendant Local 4, and the issuance forthwith of appropriate notices or other communications to the members, officers, and agents of Defendants, and all those in active concert with them; requiring the immediate return to work of all employees of Plaintiff represented for collective-bargaining purposes by Defendants; and rescinding any oral or written notices, orders, directions, or requests to employees of Plaintiff authorizing, directing, inducing or encouraging any strike, slow-down, work stoppage, refusal to work, or other limitation upon production;

III.    Directing Defendants together with Plaintiff forthwith to arbitrate, pursuant to the collective-bargaining agreement between Plaintiff and Defendants, the present dispute; and

IV.    Granting such other and further relief to which Plaintiff may be entitled, including damages, costs and disbursements of the action.

June 9, 2005

Respectfully submitted,

_____
Timothy E. Copeland Jr.
Peter B. Robb
DOWNS RACHLIN MARTIN PLLC
80 Linden Street
PO Box 9
Brattleboro, VT  05302-00009
Telephone: 802-258-3070
Fax:  802-258-2286
E-mail:  tcopeland@drm.com

and

_____
Nathan L. Kaitz (BBO# 256760)
Laurence J. Donoghue (BBO# 130140)

STATE OF MASSACHUSETTS
COUNTY OF SUFFOLK

David Powilatis hereby certifies as follows:

I am the Manager of Labor Relations for Otis Elevator Company; I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are false, I am subject to punishment.

_____6/9/05_____     _____
Date                   David Powilatis

STATE OF MASSACHUSETTS
___SUFFOLK_____ COUNTY, SS.

At ___Boston___, Massachusetts, this _9th_ day of June 2005, David Powilatis, personally appeared, gave oath to the truth of the foregoing, and he acknowledged this instrument, by him sealed and subscribed, to be his free act and deed.

Before me _____
             Notary Public
             Commission Expires:

Laurence J. Donoghue
Notary Public
My Commission Expires
March 21, 2008

DOWNS
RACHLIN
MARTIN PLLC                   17

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CLERK'S NOTICE


This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.

◥JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Otis Elevator Company

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Morgan, Brown & Joy, 200 State Street, 11th Fl., Boston, MA 02109

## DEFENDANTS
Local 4, International Union of Elevator Constructors; Michael Lange and Kevin McGettigan and Steve Morse

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Segal, Roitman and Coleman, 11 Beacon St., Boston, MA 02108

*(stamp: 05 11213 NMG)*

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☒ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Labor Management Act, 29 U.S.C. Sec.141, et seq.,
Brief description of cause: Interpretation of collective bargaining agreement and temporary restraining order

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ injunction & TRO
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE Gorton   DOCKET NUMBER 04-10966-NMG / 04-11108-NMG

DATE: June 9, 2005
SIGNATURE OF ATTORNEY OF RECORD: _[signature]_

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____