UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OTIS ELEVATOR COMPANY<br>Plaintiff; | )<br>)<br>) | Docket No. |
| v.<br>LOCAL 4, INTERNATIONAL UNION<br>OF ELEVATOR CONSTRUCTORS;<br>MICHAEL LANGER, INDIVIDUALLY,<br>and as BUSINESS MANAGER;<br>KEVIN McGETTIGAN, INDIVIDUALLY,<br>and as BUSINESS REPRESENTATIVE;<br>STEVE MORSE, INDIVIDUALLY, and<br>as BUSINESS REPRESENTATIVE;<br>and all others conspiring, acting in concert<br>or otherwise participating with them or<br>acting in their aid or behalf,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 05 11213 NMG<br><br>May 26, 2004 |

### DECLARATION OF SCOTT FRASER

Scott Fraser swears and affirms that the following information is true and correct to the best of his knowledge and belief.

1. I am currently employed by Otis Elevator Company ("Otis") as a Territory Manager for the Northern Maine territory, and I work out of Otis' branch office in Bangor, Maine. I have held this position for approximately 3 ½ years. Previously I was an Otis Maintenance Supervisor for about 3 ½ years. Before that I worked in the field as a Maintenance Mechanic for 13 years.

2. As Territory Manager, I am responsible for supervising all maintenance work, modernization projects, and service for elevators and escalators throughout Northern Maine. I supervise 5 Mechanics.

1

After a Local 4 meeting in late April, 2005, an Otis Mechanic, John Gorecki, who had recently resigned his membership from the International Union of Elevator Constructors ("the IUEC") and Local 4, International Union of Elevator Constructors ("Local 4"), began to receive harassing messages on his home voice mail and on his cell phone voice mail.

4. Otis determined that another employee, Mechanic Mike Chapman, had participated in at least one of the harassing phone calls. Mechanic Chapman also threatened that if he were assigned to work with Mechanic Gorecki he would make Mechanic Gorecki's life and my life "miserable." Based on Mechanic Chapman's unprofessional and inappropriate conduct and harassment, I issued Mechanic Chapman a written warning dated May 5, 2005 (A copy of this warning letter is attached as Exhibit A).

5. Thereafter, other Mechanics stated that they did not want to work with Mechanic Gorecki. For example, two employees, John Dondero and Dan Wiswell, stated that they were upset that Mechanic Chapman received a warning letter and stated that they did not want to work with Mechanic Gorecki.

3. On Tuesday, June 7, 2005, when I arrived at the Bangor, Maine branch office, I saw that all of the Mechanic's vans were parked, and none of the mechanics were present. This is very unusual, and it indicates that the Mechanics had driven the vans in and parked them during the night. Later in the morning, approximately between 9:00 and 9:30 a.m., the Mechanics arrived at the office in their personal cars to go to work. They informed me that they were upset because an Apprentice had been disciplined for refusing to work with Mechanic Gorecki, and had been prepared not to come to work at all that day.

2

4. I understand that between 9:00 and 9:30 a.m., one or more of the Mechanics received a call from someone, and the Mechanics all went to work. One Mechanic, John Dondero, told me that "if Eric isn't hired back, word is we're going on strike tomorrow."

5. On Wednesday, June 8, 2005, I met the Mechanics first thing in the morning. I asked, "so, what's the deal?" They said "we don't know, we haven't heard." I then gave the mechanics their assignments and they went to work. About a half hour later, the Mechanics each called in to say that they were going home either for "personal reasons" or claiming to be sick. Two mechanics, John Dondero and Mark Cormier came to my office. They were laughing and chuckling. Mechanic Cormeir stated, "I guess you've heard by now, we're all sick."

6. At or about 7:00 or 7:15 p.m., Wednesday June 8, 2005, Mechanic John Dondero called me. He said he wanted to let me know that he had just called Mechanic Gorecki to offer a "friendly solution." He reported that he had told Mechanic Gorecki that if he just came back to the union, the union would support him, and that the union wanted Mechanic Gorecki to join the union in solidarity to support Eric Smith. Immediately after that call, Mechanic Gorecki called me to report the same conversation.

7. This morning, Thursday June 9, 2005, at or about 6:45 a.m., Mechanic Dan Wiswell called me to say that his stomach was upset and he would not be at work. At or about 7:30 a.m., Mechanic Marc Cormeir refused to take a call, stating that he was "sick." At or about 7:45 a.m., Mechanic Mike Chapman left a message that he will not be at work because "my diabetes is still screwed up" (yesterday his claim was that he was too stressed to work). At or about 8:15 a.m., I called Mechanic John Dondero to ask when I could expect him at work. He said "I'm not feeling up to it yet." I commented, "John, you're not very good at this." He responded, "sorry, I tried." I asked "so you're refusing to come to work?" and he said "yes."

3

8.  At this point, all Mechanics that work out of the Bangor office who are members of Local 4 have refused to work today because they are "sick."

SWORN to under the pains and penalties of perjury.

Dated: June ___, 2005

                                                        _____
                                                        Scott Fraser

BTV.267310.2

**Otis Elevator Company**

*Otis*
A United Technologies Company

*personnel file*
*5/13/05*
*M-SL*

May 5, 2005

Mr Mike Chapman
487 Benton Road
Albion, ME 04910

Re:   **Article XXII, par. 5(e); Misconduct and Unsatisfactory Performance**

Dear Mike:

As provided for in Article XXII, Par 5(e) of the labor contract between Otis Elevator Company and the International Union Of Elevator Constructors (IUEC), this letter will serve to notify you that you are not fulfilling your responsibilities at a satisfactory level. By copy of this letter you are being placed on notice and being given an opportunity to improve your conduct, behavior and performance.

The improvement in your conduct, behavior and performance must be immediate and sustained. If such improvement is not immediately forthcoming, you will be subject to further discipline, up to and including the termination of your employment with Otis Elevator Company. The following reasons are the basis for our decision:

During the week of April 18, 2005, you told me that you would not work with John Gorecki because he had exercised his right to resign from the Union. When I told you that you could not discriminate against John because of his Union status you became belligerent and said that if I assigned you to work with him you would make John's life miserable and my life miserable. On April 22, 2005, I gave you a verbal warning for insubordination and counseled you that your behavior was unacceptable and unprofessional. Branch Manager Dot Mynahan also spoke to you that day and warned you not to harass or bother John about this issue.

Despite those prior warnings, you left a message on John's answering machine at his house on Friday night, April 29th. Your message was extremely inappropriate and unprofessional. Moreover, your actions were contrary to the specific warnings we had issued to you and are contrary to Otis' obligation to maintain a harassment-free environment for its employees.

Accordingly, please be advised that further incidents of insubordination, harassment or intimidation, or other inappropriate conduct, unprofessional behavior or poor performance may subject you to further discipline, up to and including termination of your employment with Otis Elevator.

Please contact me with any questions.

Sincerely,

Scott Fraser

cc:   Michael Langer

**Exhibit A**