UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OTIS ELEVATOR COMPANY,                    )<br>                                                                 )<br>    Plaintiff,                                              )<br>                                                                 )<br>v.                                                             )     Docket No.<br>                                                                 )<br>LOCAL 4, INTERNATIONAL UNION     )<br>OF ELEVATOR CONSTRUCTORS;        )<br>MICHAEL LANGER, INDIVIDUALLY, and as )<br>BUSINESS MANAGER; KEVIN McGETTIGAN, )<br>INDIVIDUALLY, and as BUSINESS        )<br>REPRESENTATIVE; STEVE MORSE,   )   05 11213 NMG<br>INDIVIDUALLY, and as BUSINESS        )<br>REPRESENTATIVE, and all others        )<br>conspiring, acting in concert or otherwise )<br>participating with them or acting in their aid )<br>or behalf.                                               )<br>                                                                 )<br>    Defendants.                                         )| |

## DECLARATION OF RICHARD HOGUE

Richard (Dick) Hogue, being duly sworn, deposes and says as follows:

1.    I am employed as a Construction Superintendent by Otis Elevator Company ("Otis"). I have been employed by Otis for more than 30 years. Otis is engaged in the business of selling, installing, constructing, modernizing, maintaining and servicing elevators and escalators. Otis has its headquarters in Farmington, Connecticut and field offices throughout the United States, including Portland, Maine. I supervise approximately 12 employees.

2.    Otis has a collective-bargaining agreement with the International Union of Elevator Constructors ("IUEC") (the "Otis Agreement") for and on behalf of its local unions, including IUEC Local 4, ("Local 4"), which represents Otis' employees in parts of Massachusetts, New Hampshire and Maine.

3.     As Construction Superintendent for Otis, I currently have overall responsibility for insuring that Otis satisfactorily completes its agreements for installing elevators at projects throughout New Hampshire, Maine and northern Massachusetts.

4.     On Monday June 6, 2005, at about 7:30 a.m., I met with Apprentice Eric Smith, a Local 4 member. I assigned him to go work with Mechanic John Gorecki, and Apprentice Smith refused. Apprentice Smith explained, "I promised by brothers and sisters in the Union that I would not work with John Gorecki." I then informed Apprentice Smith that there was no reason not to work with Mechanic Gorecki and that I could discipline him for refusing to work with Mechanic Gorecki. Apprentice Smith responded: "My word to the Union is worth more than money or my job." When I explained that I did not have any other work for him, he left my office.

5.     I prepared a written warning, known as an Article XXII discipline letter, for Apprentice Smith. A copy of this letter is attached at Exhibit A.

6.     That same afternoon, I drove to Apprentice Smith's house and gave him the Article XXII discipline letter. He repeated his promise to the Union not to work with Mechanic Gorecki. At the end of our conversation, he also mentioned that he was afraid to work with Mechanic Gorecki because Mechanic Gorecki had a gun. This was the first time I had ever heard about Gorecki having a gun. I asked Apprentice Smith to explain his concerns further, and he provided only a very vague, rambling description of an incident when Mechanic Gorecki had a gun, but did not explain whether or how he was concerned. I asked Apprentice Smith if he had reported this incident before, and he had not. Smith also informed me that he had spoken to the Union, and that he planned to go to Boston on a job the Union had for him there. I then told Apprentice Smith that he needed to report to work in my office the next day – Tuesday, June 7, 2005 – or call me if he was not going to be coming in. Apprentice Smith asked me if I was just

2

going to send him to work with Mechanic Gorecki again. I replied, "Probably." Smith then wanted to know if I would terminate his employment if he again refused to work with Gorecki. I told him I did not know, but that he should just come to the office.

7. The next morning, June 7, I called Apprentice Smith and asked if he would be coming to work. He stated that he was on his way to work for another company. I asked if he quit, and he paused. He said he needed to call his "representation." He called me back soon and asked if he would be assigned to work with Mechanic Gorecki. When I said "yes," he said "I refuse to work with John, but I don't quit."

8. Later, almost all of the Portland Otis employees in Local 4 showed up at the parking lot of Otis' Portland office. Together with Regional Field Operations Manager ("RFOM") Doug Christensen, I went out to talk to the workers. They told us that they were upset that Apprentice Smith had received a warning and that he might be fired. They also told us that they were all there to support Apprentice Smith. Finally, they complained that it was not safe to work with Mechanic Gorecki because he carried a gun.

9. The Local 4 members suggested a solution for dealing with Gorecki. They suggested that the Company assign him to maintenance tasks so that he could work alone. I explained to the Union members that the Company could not change Mechanic Gorecki's duties just because he had decided to leave the Union.

10. At that time, RFOM Christensen and I decided to obtain more information about the incident with the gun, and that the Local 4 members should return to work. They agreed, and returned to work, about two hours later than usual.

11. That same afternoon, RFOM Christensen and I drove up to Bangor to meet with Mechanic Gorecki. When we asked him about the gun, he explained that he was aware of the company policy and he never carried a gun to work. He also told us that he had a Maine license

to carry a concealed weapon. He described the situation where Apprentice Smith learned about the gun. Gorecki and Smith were working together at a job on a Friday. At the end of the shift, Gorecki's wife picked him up and gave Smith a ride back to the office. Smith noticed that Gorecki's wife gave him a gun and the Gorecki put it on. Gorecki stated that Smith never complained about the gun, and he had not had any problems working with him the following Monday.

12. Later that day, I called Apprentice Smith to ask him for his version of these events, but he never called me back that day. I finally received a voicemail message last night (June 8) from apprentice Smith acknowledging that he had received my call.

13. The next morning, June 8, no one came in to work. At around 8:00 a.m., the Local 4 workers all came in. RFOM Christensen and I talked to them. First, RFOM Christensen explained what they had learned from Mechanic Gorecki. I explained that I had tried to call Apprentice Smith for his version, but that he had not called me back. When I asked if anyone had spoken to Smith, one of the Mechanics – Peter Hackett – said he had talked to Smith and that it sounded like my description of Mechanic Gorecki's version.

14. The Local 4 workers continued to complain about having to work with Mechanic Gorecki. When they complained that it was "not fair" to issue an Article XXII letter over these issues, RFOM Christensen stated that fairness issues should be brought to the grievance process.

15. Eventually, the workers all left, and I thought they had gone back to work. Shortly thereafter, however, I noticed that a crew that I had expected to find working out back on the job site was not there. Therefore, I called one of the Mechanics. He said: "I'm not gong to work today, and I'm not coming back until this issue is resolved." When I told him that I wished he would not do that, the employee replied: "It's what I need to do." When I asked him what the others were doing, he said: "I don't know, but we are all meeting pretty soon."

4

16. At about that time, we received an emergency call and I could not find anyone to cover the call. Therefore, I left myself to go handle the situation. As I approached the highway around 9:45 a.m., I saw that all of the Otis trucks were gathered in a parking lot near the interstate. Shortly thereafter, I heard from the Local 4 members, indicating that they would not be coming in for work that day.

17. Last night, I spoke with two Mechanics. Mechanic Juan Barajas asked if anything had changed with respect to the Article XXII issue. When I stated nothing had changed, he indicated that he would not be coming into work today. Mechanic Jason Lyons also called about the status of the dispute, and informed me that he and Mechanic Scott Hapworth would not be coming into work today.

18. This morning, I arrived at the office to find that none of the Mechanics had reported for work. I proceeded to call each Local 4 member in my crew. I left messages at the homes of ten individuals, and have not head back from them. Mechanic Barajas called again to confirm he would not be reporting for work. Mechanic Scott Melcher called me back after I left a message and informed me when I called that he was supposedly not feeling well, and would not be coming in. Mechanic Shaun Niles answered his telephone when I called, and similarly informed me that he was not feeling well and would not be reporting for work. Finally, Mechanic Scott Petterson answered his telephone when I called and stated that he would not be coming into work, and that he thought no other members of the crew would be coming in.

19. Due to my crew's decision not to report to work, none of the projects for which I am responsible are progressing. Furthermore, I was required this morning to make an emergency maintenance call myself in the absence of my crew, which prevented me from performing my other job duties.

20.   All of my projects are time sensitive. If the Local 4 members continue to refuse to work, Otis' work will fall behind schedule and adversely impact the general construction schedules of the overall projects. In addition, the delay will harm our relationship with the general contractors. For example, at Bowdoin College, Otis is installing two elevators with 7 stops each. The general contractor is Barr & Barr. This job is on a tight schedule. A delay in the elevator installation will hinder the timely completion of the entire building. Another example is the University of New England Residential Center. This project requires one elevator with 5 stops. The general contractor of this project -- Ouellet Assoc. -- is a very big and important Otis customer, and they are very strict about their schedule. Otis' reputation will be seriously impaired if the work stoppage continues.

SWORN to under the pains and penalties of perjury.

Dated: June 9, 2005

_____
Richard Hogue

**Error! Reference source not found.**

6

Otis Elevator Company



June 6, 2005

Mr. Eric Smith
[*ADDRESS*]

Re:     **Article XXII, par. 5(e); Misconduct and Unsatisfactory Performance**

Dear Mr. Smith:

As provided for in Article XXII, Par 5(e) of the labor contract between Otis Elevator Company and the International Union Of Elevator Constructors (IUEC), this letter will serve to notify you that you are not fulfilling your responsibilities at a satisfactory level. By copy of this letter you are being placed on notice and being given an opportunity to improve your conduct, behavior and performance.

The improvement in your conduct, behavior and performance must be immediate and sustained. If such improvement is not immediately forthcoming, you will be subject to further discipline, up to and including the termination of your employment with Otis Elevator Company. The following reasons are the basis for our decision:

On May 27th, you informed Otis that, although you were on vacation the week of May 30th, you would be available on June 6th for work. Today, you were assigned to a job in Bangor. You refused that assignment. Your actions constitute blatant insubordination.

Accordingly, please be advised that further incidents of insubordination, misconduct, poor performance or other inappropriate conduct and behavior may subject you to further discipline, up to and including termination of your employment with Otis Elevator.

Please contact me with any questions.

Sincerely,


cc:    Mr. Michael Langer
       Mr. Doug Christensen