UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| OTIS ELEVATOR COMPANY,<br>      Plaintiff<br><br>v.<br><br>LOCAL 4, INTERNATIONAL UNION<br>OF ELEVATOR CONSTRUCTORS;<br>MICHAEL LANGER, INDIVIDUALLY,<br>and as BUSINESS MANAGER: KEVIN<br>McGETTIGAN, INDIVIDUALLY, and<br>as BUSINESS REPRESENTATIVE;<br>STEVE MORSE, INDIVIDUALLY, and<br>as BUSINESS REPRESENTATIVE, and<br>all others conspiring, acting in concert or<br>otherwise participating with them or acting<br>in their aid or behalf.<br>      Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-11213NMG |

**DEFENDANTS' RESPONSE TO
SHOW CAUSE ORDER**

**I.    INTRODUCTION.**

This case arises out of a request by Otis Elevator Company ("Otis") for a temporary restraining order and injunctive relief. On June 9, 2005 the Court ordered the Defendants "to show cause why this court should not enter an order granting Plaintiff a preliminary injunction". Temporary Restraining Order.

The primary dispute between the parties concerns whether Plaintiff can satisfy its burden that Local 4, International Union of Elevator Constructors ("Local 4") is responsible for the work stoppage about which Otis complains. Local 4 has submitted herewith Affidavits supporting its position that the conduct about which

Otis complains was the concerted activity of Otis employees, not the responsibility of Local 4.

## II. STATUTORY BACKGROUND.

This cases arises under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  Section 301 confers jurisdiction on district courts over suits for violations of collective bargaining agreements.  Section 301(a) provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. §185(a).

The statute provides no expressed warrant for injunctive relief.  Indeed, injunctions in labor disputes had been withdrawn from the arsenal of employer weapons in 1932.  Norris-LaGuardia Act, 29 U.S.C. §101 et seq.  That statute plainly withdrew jurisdiction from federal courts to grant temporary restraining orders and injunctions in labor disputes:

> "No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter."  29 U.S.C. §101.

By 1960 the Supreme Court had taken a strong position in favor of the enforcement of arbitration provisions in collective bargaining agreements. See <u>United Steelworkers of America v. American Mfg. Co.</u>, 363 U.S. 564 (1960); <u>United Steelworkers of America v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574 (1960); <u>United</u>

Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).  The Court had explicitly recognized that the no-strike provision, common to many collective bargaining agreements, was the *quid pro quo* for the employer's promise to arbitrate grievances.  Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448 (1957). Ten years later the Court recognized that specific enforcement of the arbitration promise gave rise to an exception to Norris-LaGuardia's express withdrawal of federal court jurisdiction to enjoin strikes.  Boys Markets v. Retail Clerks, 398 U.S. 295 (1970).  Thus was born the Boys Markets' injunction.

As the Supreme Court and the First Circuit have consistently recognized since 1970, Boys Markets represents a narrow exception to Norris-LaGuardia.  In a recent case between these same parties the First Circuit recalled the background to this type of litigation:

> As background to this principle, we note that the use of injunctions in labor disputes has evolved through various stages, commencing with an early period during which the organization of labor for collective bargaining purposes was considered a criminal enterprise, and the indiscriminate use of the labor injunction to stop these activities was the order of the day. Cf. In re Debs, 158 U.S. 564, 586, 15 S.Ct. 900, 39 L.Ed. 1092 (1895) (upholding President Cleveland's power to obtain an injunction against the Pullman Strike despite the absence of any statutory authority, on the grounds that "the wrongs complained of [were] such as affect[ed] the public at large"). In response to a period of considerable labor instability and unrest, Congress enacted the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101-115, which continues in effect to this day. Nevertheless, changing times and the growing strength of the unions eventually led to a relaxation of these stringent standards via Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a) (providing federal courts jurisdiction to hear disputes arising from violation of collective bargaining agreements), as interpreted in Boys Markets, 398 U.S. at 250-54, 90 S.Ct. 1583, to permit labor injunctions in limited circumstances.

Otis Elevator Co. v. International Union Of Elevator Constructors, Local 4, 408 F.3d 1, 7 -8 (1 Cir. 2005).

Jurisdiction to grant relief under §301having been authorized, the question of the circumstances under which such relief should be granted begins with the statute itself:

> Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

29 U.S.C. §185(b).

### III.     **SUPREME COURT PRECEDENT.**

Two Supreme Court cases have resolved issues central to this case. In Carbon Fuel Company v. United Mine Workers, 444 U.S. 212 (1979), the court made clear that Congress, in enacting Section 301 "stopped short of imposing liability upon a union for strikes not authorized, participated in, or ratified by it." 444 U.S. at 216. The court also made clear that a union's responsibility will be determined by the common law of agency. 444 U.S. at 217. Two years later the court decided Complete Auto Transit v. Reis, 451 U.S. 401 (1981). In Complete Auto Transit, the court held that Section 301 does not authorize relief against individual employees. The Court stated "although lengthy and complex, the legislative history of Section 301 clearly reveals Congress' intent to shield individual employees from liability

4

from damages arising from their breach of the no strike clause of a collective bargaining agreement, whether or not the union participated or authorized the illegality." 451 U.S. at 407. Together, <u>Carbon Fuel</u> and <u>Complete Auto Transit</u> stand for the twin propositions that a union's responsibility under Section 301 is to be tested under the common law principles of agency and that individual employees may not be held responsible under Section 301.

The question presented there, whether a Section a Section 301 <u>Boys Markets</u> injunction may issue absent a showing that the union was responsible for the alleged breach of the collective bargaining agreement was addressed by the Third Circuit in <u>Philadelphia Marine Trade Association v. Local 1291</u>, <u>Ila</u>, 900 F.2d 754 (3 Cir. 1990). The Third Circuit clearly held that a Plaintiff must prove agency as a precondition to injunctive relief against a union. 909 F.2d at 758-59. See also <u>Bechtel Construction v. Laborers Local 721</u>, 1987 WL 15883 (D.Mass. 1987) (applying common law agency principles to determine liability in a Section 301 case).

Otis took a hard line with one of its employees. Rather than accommodate an employee who was uncomfortable working with a particular co-worker, Otis decided to use discipline to deal with the problem. The employee's co-workers responded negatively to this choice. Local 4 advised the employees that they were not protected by the collective bargaining agreement in this action. Otis, rather than solving the problem of its own creation, applied to the court for relief. Otis is unable to carry its burden of proof. Preliminary injunctive relief should be denied.

        Respectfully submitted,

        LOCAL 4, INTERNATIONAL UNION OF

OPERATING ENGINEERS, et al,

Attorneys for Defendants,

/s/ Paul F. Kelly
Paul F. Kelly
BBO #267000
Anne R. Sills
BBO #546576
Segal, Roitman and Coleman
11 Beacon Street
Suite #500
Boston, MA  02108

Dated:  June 20, 2005

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' Response to Show Cause Order has been served by first class mail upon the attorneys for the plaintiff, Otis Elevator Company, Timothy E. Copeland, Jr. and Peter B. Robb at Downs Rachlin Martin PLLC, 80 Linden Street, P.O. Box #9, Brattleboro, VT  05302 and Nathan L. Kaitz, Laurence J. Donoghue and M. Amy Carlin at Morgan, Brown & Joy, LLP at 200 State Street, 11th Floor, Boston, MA  02109 this 20th day of June, 2005.

/s/ Paul F. Kelly
Paul F. Kelly, Esquire

PFK/05213/Defendants'Response.doc