UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| OTIS ELEVATOR COMPANY,<br>Plaintiff<br><br>v.<br><br>LOCAL 4, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS; MICHAEL LANGER, INDIVIDUALLY, and as BUSINESS MANAGER: KEVIN McGETTIGAN, INDIVIDUALLY, and as BUSINESS REPRESENTATIVE; STEVE MORSE, INDIVIDUALLY, and as BUSINESS REPRESENTATIVE, and all others conspiring, acting in concert or otherwise participating with them or acting in their aid or behalf.<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-11213NMG |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
TO TRANSFER THIS ACTION TO THE U.S. DISTRICT COURT,
DISTRICT OF MAINE IN PORTLAND OR BANGOR**

**I.   INTRODUCTION**

Otis Elevator Company, a New Jersey corporation, brought this action to enjoin a work stoppage initiated by its Maine elevator mechanic, apprentice and helper employees, who were protesting the discipline of Eric Smith, an Otis apprentice. The employees are represented by Local 4, International Union of Elevator Constructors ("Local 4"). Otis filed suit pursuant to the Labor Management Relations Act, 29 U.S.C. §185. It contends that the stoppage was initiated, authorized and/or directed by Local 4; that the work stoppage violates Otis' collective bargaining agreement with Local 4 which provides for arbitration; that this dispute is related to <u>Otis</u>

Elevator Co. v. Local 4, International Union of Elevator Constructors, et al, C.A. No. 04-10966-NMG and it brought against the same defendants; and that it will suffer irreparable harm if the stoppage is not enjoined. Defendants do not dispute either that Local 4 is party to a collective bargaining agreement with Otis or that the employees' discipline is arbitrable. Defendants do dispute that Local 4 and/or its officers initiated, authorized, or directed the work stoppage or that this matter is in any way related to Otis Elevator Co. v. Local 4, International Union of Elevator Constructors, et al, C.A. No. 04-10966 NMG, which is currently pending before this Court pursuant to a remand by the United States Court of Appeals for the First Circuit (Case Nos. 04-1933, 04-2047).

At this juncture, defendants are before the Court on their Motion to Transfer this Action to the U.S. District Court, District of Maine in Portland, brought pursuant to 28 U.S.C. §4014(a).

## II.    STATEMENT OF RELEVANT FACTS

Otis employs elevator mechanics, apprentices and helpers at three Maine locations: Portland, Westbrook and Bangor. These employees live in approximately 17 different Maine cities and towns ranging from Portland in the south to Albion and Pownall in the north. They generally work the day shift and are paid on an hourly basis for work performed. See, e.g., Affidavits of Juan Barajas, David M. Brackett, Michael S. Chapman, Mark S. Cormier, John Dondero, Peter F. Hackett, Jason J. Lyons, Keith A. McAvoy and Daniel Wiswell, submitted herewith.

In early April, 2005, one of Otis's mechanics, John Gorecki, notified Local 4 and the International Union of Elevator Constructors, of his decision to resign from the Union and to become a *Beck* objector.

Gorecki's decision upset a number of Otis's employees. Many of these employees felt betrayed by Gorecki, whom they had previously gone out of their way to help. Last Fall, Gorecki had sold calendars and teddy bears to raise money to cover the cost of his trip to Russia to adopt a child. A number of his Union co-workers had purchased these items to support him. When he needed income to cover his lost wages, they ponied up again. Yet now Gorecki was seeking to obtain all of the benefits of Union membership without bearing any of the financial burden. His decision to withdraw felt like a personal affront. See e.g., Affidavits of Juan Barajas, Eric Smith.

Many of these employees were also aware that the Maine apprenticeship school had also gone out of its way to help Gorecki by agreeing to forgive him the few classes he would miss because of his trip. Gorecki had taken advantage of this decision, returned from Russia to take and pass the mechanic's test and then filed a complaint about the program with Otis, saying that the program had fraudulently forgiven him the classes he missed. Otis used this complaint to try and discredit the school. These actions made Gorecki's co-workers distrust him. Affidavits of Juan Barajas, Eric Smith.

The employees' antipathy toward Gorecki was not limited to these incidents. He also acted in a manner that made employees reluctant to work with him. He had been the driver in two accidents in which another employee, John Dondero, had been a passenger. He had become so angry during a discussion with two of his co-workers that they were worried about what he would do. Apprentice Eric Smith saw him buckling on a gun and holster and riding around with it in the City, all in front of Gorecki's two young children. Smith also experienced Gorecki's odd behavior while driving to a job with him located north of Bangor. Gorecki on the steering wheel and claimed to have a "sugar high." Affidavits of John Dondero, Daniel Wiswell, Eric

3

Smith.  Thus, when the Company assigned Smith to work with Gorecki, Smith refused.  The Company responded with a warning letter, threatening discipline up to and including termination if he continued to refuse.  Declaration of Richard Hogue, Exhibit A.

This action incited the employees, who thought that the Company was being unfair.  They had taken no action when the Company sent a warning letter to mechanic Michael Chapman in May, 2005, for allegedly calling Gorecki and harassing him.  However, many of these employees shared Smith's concerns about how safe it would be to work with Gorecki.  They were also aware that the Company had on other occasions permitted job assignment changes, when two employees could not work together.  For example, when apprentice Bert Pelletier indicated his desire to cease working with mechanic Juan Barajas, the Company permitted him to work with a different mechanic.  Affidavits of Juan Barajas, John Dondero.

On June 7, 2005 most of the employees working out of the Portland and Westbrook offices met with Company officials to express their concerns about working with Gorecki and their support for Eric Smith.  Some expressed disapproval of Gorecki's resignation from the Union; others identified his carrying of a gun; still others focused on the unfair treatment of Smith.  The same point was made to Company official Scott Fraser in the Bangor office.  Affidavits of John Dondero, Mark Cormier, Daniel Wiswell.  The Company agreed to look into the employees' concerns about Gorecki carrying a gun.

When, on June 8, the Company advised the employees that it was satisfied that Gorecki's ownership of a gun posed no threat and that employees would be disciplined if they refused to work with him, the employees took matters into their own hands and stopped work.  On June 9, many employees called in sick; while others refused to work.

Neither Local 4 nor its Business Manager, Michael Langer, or Business Representatives, Kevin McGettigan and Steve Morse, advised, directed, authorized or otherwise supported Otis's Maine employees in their decision to stop work. The employees discussed the matter among themselves and decided to stand up in support of fellow employee Eric Smith. Affidavits of Dondero, Wiswell, M. Barajas, P. Barajas, J. Barajas, David Brackett, Daniel Brackett, Chapman, Cormier, Hackett, Steve Hebert, Thomas Hebert, Jr., Henderson, Laverdiere, Lyons, MacGrath, Kevin MacAvoy, Keith MacAvoy, Melcher, Millington, Niles, Patch. In fact, when Local 4 learned of the work stoppage it sent a letter to each of its Maine members telling them to return to work. Affidavit of Michael Langer.

### III. ARGUMENT

**The transfer of this case to the District of Maine is appropriate.**

The transfer of this action to the U.S. District Court, District of Maine in Portland is warranted in light of the fact that virtually all of the defendants' and plaintiff's witnesses are located in Maine, the site of the actions are all in Maine, justice would be best served if the case were heard in Maine and there is no compelling countervailing reason why the action should remain in the District of Massachusetts.

28 U.S.C. §4014(a) provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision lies within the discretion of the trial court once the moving party has established that the action could have been brought in the district to which it wishes to transfer the matter. Codex Corp. v. Milgo Electronic Corp., 553 F.2d 735, 737 (1st Cir. 1977). This action could have been brought in the District of Maine. 29 U.S.C. §185(a) provides that "suit may be brought in any district court . . . having jurisdiction of the parties . . .

5

. without regard to the citizenship of the parties." Although defendants deny that Local 4 and/or its officers and agents are proper parties, 29 U.S.C. §185(c) provides in relevant part that a district court has jurisdiction of a labor organization . . . in "any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." As set forth in the Verified Complaint, Local 4 represents Otis's employees in Maine. Thus, suit could have been brought in the District of Maine.

In adjudicating a motion for transfer, the Court is expected to accord an "individualized, case-by-case consideration of convenience and fairness." McEvily v. Sunbeam-Oster Company, Inc., 878 F. Supp. 337, 344 (D.R.I. 1994), citing Blinzler v. Marriott International, Inc., 857 F. Supp. 1, 3 (D.R.I. 1994). Although there is a presumption in favor of the plaintiff's choice of forum, that choice need not be controlling, particularly where suit has been brought in a forum that is neither plaintiff's "home turf" nor the site of the activities at issue in the case. McEvily v. Sunbeam-Oster Company, Inc., supra at 344. In fact, this Court has held that when "none of the operative facts in a case have any connection with the plaintiff's choice of forum, which is the case here, the plaintiff's choice of forum is not determinative." Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 5 (D. Mass. 1987).

In this case, plaintiff's choice of Massachusetts as the proper forum in which to file suit should not be determinative nor should it be accorded great weight. As an initial matter, Massachusetts is not Otis's "home turf." Otis is a New Jersey corporation and, while it has work locations in Massachusetts, it also has work sites in Bangor, Portland and Westbrook, Maine, which are precisely the locations where the work stoppages at issue in this case took place.

Plaintiff's choice of Massachusetts as the proper forum is likely premised on its contention that this dispute is related to Otis Elevator Co. v. Local 4, International Union of

6

Elevator Constructors, et al, C.A. No. 04-10966 NMG, which is currently pending before this Court pursuant to a remand by the United States Court of Appeals for the First Circuit (Case Nos. 04-1933, 04-2047) and that it is in the interest of judicial economy to have both cases heard by the same judge. However, even a cursory review of the affidavits filed by Otis's employees in support of this Motion and of defendants' Opposition to Plaintiff's Motion for Preliminary Injunction reveal that the cases are "related" only in so far as the plaintiff has named the same parties as defendants. Otis Elevator Co. v. Local 4, International Union of Elevator Constructors, et al, C.A. No. 04- 10966-NMG involved a work stoppage at Bentley College over the issue of whether the elevator car and hoistway doors work falls within the scope of the collective bargaining agreement between the parties. In the instant case, the work stoppage occurred when Otis's Maine employees decided amongst themselves to stop work to support Apprentice Eric Smith, whom they thought the Company was treating unfairly. To a man, these employees have made it clear that defendants Local 4, Michael Langer, Kevin McGettigan and Steve Morse played no role at all in their decision to stop work.

In addition, the Bentley case was properly brought in Massachusetts as all of the witnesses were located here and Bentley College, the site of the dispute, is in Massachusetts. The instant dispute, by contrast, occurred entirely in the State of Maine.[1]

As these cases are unrelated and Massachusetts is neither the site of the dispute nor the "home turf" of plaintiff Otis Elevator, the fact that Otis chose to file suit in Massachusetts should not be an impediment to the transfer being sought by defendants.

Furthermore, the presumption in favor of the plaintiff's choice of forum may be overcome "when the private and public interest factors clearly point towards trial in the

---

[1] In fact, when the Bentley College case was filed in May 2004 a previously filed case, Otis Elevator v. Local 4, et al, No. 04-CV-74 was then pending in the District of Maine. The Maine case had been filed in April 2004.

7

alternative forum." Atari v. United Parcel Service, Inc., 211 F. Supp.2d 360, 362(D.Mass. 2002), citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).  Those private and public interest factors potentially relevant to a decision to transfer were set forth most recently by this Court in Atari.  The private interests include "1) the convenience of the parties; 2) the convenience of the witnesses; 3) the relative ease of access to sources of proof; 4) the availability of process to compel attendance of unwilling witnesses; 5) the cost of obtaining willing witnesses; and 6) any practical problems associated with trying the case most expeditiously and inexpensively."  Atari, supra at 362.  Of these factors, "the convenience to the expected witnesses is 'probably the most important factor, and the factor most frequently mentioned.'" Brookfield Machine, Inc. v. Calbrit Design, 929 F. Supp. 491, 501 (D. Mass. 1996).  "This factor involves not merely a consideration of the number of witnesses located in or near the respective forums, but the nature and quality of their testimony in relationship to the issues of the case." McEvily v. Sunbeam-Oster Company, Inc., 878 F. Supp. at 345, citing Houk v. Kimberly-Clark Corp., 613 F. Supp. 923, 928 (W.D.Mo. 1985).

     There can be no dispute that convenience to the witnesses weighs heavily in favor of transferring this case to the District of Maine.  First, virtually all of the witnesses are located in Maine.  Every one of the defendants' approximately 23 witnesses who participated in the work stoppage on June 8 and 9, 2005 live in cities and towns across the State of Maine.  Some live close to the federal court house in Portland while others live north of Bangor, which would result in a 3½ to 4 hour drive to Boston.  By transferring the case to Portland, Maine, the Portland-based witnesses are saved the approximately 1½ hour trip they would otherwise have to take to Boston while those located in and around Bangor are saved even more travel time.  Several of the plaintiff's witnesses are also located in Maine and those who are not are based outside of

8

Massachusetts. Therefore, any convenience to those few plaintiff's witnesses who are located outside of Maine is far outweighed by the benefit to those who reside in Maine.

The testimony of all of these witnesses, as evidenced by the affidavits filed with this motion as well as the affidavits filed in support of plaintiff's motion for a temporary restraining order, is central to the outcome of this case. The plaintiff alleges that Local 4, Mike Langer, Kevin McGettigan and Steve Morse are responsible for the June 8 and 9 work stoppage. Its witnesses attempt to prove their case by implication and innuendo. The defendants' witnesses, who actually participated in the sick out, will testify that Local 4, Langer, McGettigan and Morse played no role in their decisions to stand up for their co-worker and were not responsible for their participation.

Plaintiff, in opposing this motion, "must state with particularity why it is a particular witness weighs in favor of this court retaining jurisdiction." McEvily v. Sunbeam-Oster Company, Inc., 878 F. Supp. at 347. Plaintiff will not be able to meet that burden as most of its witnesses reside in Maine. Richard Hogue, Scott Fraser and Todd Pettersen, all of whom submitted affidavits in support of plaintiff's motion for a temporary restraining order, all work for Otis in Maine.

As to the convenience of the parties, transfer of this action to Maine would actually be more convenient for the plaintiff than it would be for the defendants. However, the defendants are willing to be inconvenienced in order to facilitate the participation of their witnesses. Furthermore, transfer of the case to Maine would "minimize disruption of the Company's business and be correspondingly more convenient for the Company," a factor considered by the McEvily Court in its decision to grant the defendant Sunbeam-Oster Company's motion to transfer in McEvily v. Sunbeam-Oster Company, Inc., 878 F. Supp. at 344. Hogue, Fraser and

Pettersen are involved in the day-to-day operations of Otis in Maine and their attendance at trial in Boston would likely be disruptive to the Company.  Ironically, the convenience of the parties actually favors the plaintiff even though it opted for Massachusetts as the venue in which to bring suit and it is the defendants seeking to transfer the case to Maine.

Given the number of witnesses who will be called to testify in this case and the disruption it will cause to their lives as well as to the Company, justice would be best served if this action were transferred to Maine.

With the exception of the factor of local interest in deciding local conflicts, one of the "public" factors identified in <u>Atari v. United Parcel Service, Inc.</u>, 211 F. Supp.2d at 362, the remaining factors have no relevance to this motion or to the Court's analysis.

## IV.    CONCLUSION

For all of the reasons set forth herein, transfer of this action to the District of Maine is warranted.

Respectfully submitted,

LOCAL 4, INTERNATIONAL UNION OF OPERATING ENGINEERS, et al,

By their attorneys,

/s/ Anne R. Sills
Paul F. Kelly, Esquire
BBO #267000
Anne R. Sills, Esquire
BBO #546576
Segal, Roitman and Coleman
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

10

Dated: June 20, 2005

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Defendants' Memorandum in Support of Motion to Transfer this Action to the U.S. District Court, District of Maine in Portland or Bangor has been served by first class mail upon the attorneys for the plaintiff, Otis Elevator Company, Timothy E. Copeland, Jr. and Peter B. Robb at Downs Rachlin Martin PLLC, 80 Linden Street, P.O. Box #9, Brattleboro, VT 05302 and Nathan L. Kaitz, Laurence J. Donoghue and M. Amy Carlin at Morgan, Brown & Joy, LLP at 200 State Street, 11th Floor, Boston, MA 02109 this 20th day of June, 2005.

                                                        /s/ Anne R. Sills
                                                        Anne R. Sills, Esquire

ARS/ars&ts
PFK 3002 05-213/memo-suppmottransfer.doc